1
2
3
4
5
6
7
8
## UNITED STATES DISTRICT COURT
9
## SOUTHERN DISTRICT OF CALIFORNIA
10
11   RICARDO PONCE,
12
                                   Petitioner,
13      vs.
14
15   CHARLES HARRISON, Warden,
16
                              Respondent.

CASE NO. 05cv0256 IEG (WMc)

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS**

17
18                              **I.**
19                     **INTRODUCTION**
20      Ricardo Velazquez Ponce ("Petitioner"), a state inmate proceeding *pro se*, challenges his
21 San Diego Superior Court conviction for forcible rape in case number SCN 053030 with a petition
22 for writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254.  In the Second Amended
23 Petition of Habeas Corpus, Petitioner claims he is entitled to relief for violations of his
24 constitutional rights for the following reasons: (1) Petitioner was prevented from testifying in his
25 own defense, and (2) prior convictions for sexual offenses were admitted into evidence.
26      This Report and Recommendation is submitted to United States District Court Judge Irma
27 E. Gonzalez, pursuant to 28 U.S.C. § 636(b) and Local Civil Rule H.C.2 of the United States
28 District Court for the Southern District of California.  After reviewing the Petition, Respondent's

1  Answer and Memorandum of Points and Authorities, and all supporting documents submitted by

2  the parties, the Court recommends that the Petition be **DENIED** for the reasons stated below.

3  ## II.

4  ### STATE PROCEEDINGS

5  On November 22, 1999, the San Diego District Attorney's Office filed an amended

6  information against Petitioner. (Lodgment 1 at 7, 8). The information charged Petitioner with one

7  count of forcible rape (Cal. Penal Code 261(a)(2)) by binding and tying the victim within the

8  meaning of Cal. Penal Code 667.61(b)(c)(e)(6). The information also contained special sentence

9  enhancing allegations that Petitioner qualified as a habitual sexual offender (Cal. Penal Code

10  667.61(a) (e)(6), 667.71), had prison priors from prior sexual offense convictions in 1991 and

11  1992, and those prior convictions qualified as serious felonies (Cal. Penal Code 667(a)) under

12  California's Three Strikes Law (Cal. Penal Code 1170.12). (Lodgment 1 at 7-8). On December 6,

13  2000, the jury found all special allegations were true and found Petitioner guilty of rape.

14  (Lodgment 1 at 213 214). The state court sentenced Petitioner to state prison for 85 years to life on

15  March 17, 2000. (Lodgment 1 at 219).

16  On, March 21, 2000 Petitioner filed a timely appeal in the Court of Appeal of the State of

17  California. (Lodgement 1 at 183.) On April 16, 2002, the California Court of Appeal granted

18  Petitioner's motion for recall of remittitur, ordered a rehearing, and vacated its opinion filed on

19  December 31, 2001. (Lodgment 2.) In an unpublished opinion, the California Court of Appeal

20  affirmed the conviction on September 5, 2003. (Lodgment 3 at 9.) On November 12, 2003, the

21  Supreme Court of California declined review without consideration of the merits in a one line

22  order – "Petition for review DENIED." (Lodgment 4.)

23  ## III.

24  ### FEDERAL PROCEEDINGS

25  The California Supreme Court denied Petitioner's petition for review on November 12,

26  2003. The ninety-day period for filing a petition for certiorari with the United States Supreme

27  Court expired on February 10, 2004, which started the running of the statute of limitations under

28  28 U.S.C. § 2244(d) for Petitioner's federal habeas petition. Absent tolling, the statute of

limitations would expire on February 10, 2005. Petitioner filed his original Petition for Writ of Habeas Corpus on February 8, 2005. Respondent filed an Answer on May 11, 2005 in response to a February 14, 2005 order by Magistrate Judge Leo S. Papas. Respondent alleged the petition was mixed because Claim One was never properly raised in state court. Petitioner argued in a Traverse filed on June 28, 2005 that Claim One was misstated by Respondent and that Claim One was exhausted because it did not rest solely on state grounds when presented to the state court. The next day, Magistrate Judge Leo S. Papas found the Petitioner had a mixed petition with an unexhausted claim.

On August 2, 2005, Petitioner filed a motion to dismiss the unexhausted claim without prejudice and asked the court to stay proceedings while Petitioner returned to state court to exhaust his claim.  District Court Judge Irma E. Gonzalez granted Petitioner's Motion for Abeyance on August 4, 2005. Petitioner was directed to file a timely petition to state court and then return to federal court to file a First Amended Petition containing all exhausted claims thirty days after the state court's ruling on the petition.

On August 25, 2005 Petitioner filed a Petition for Habeas Corpus to the California Supreme Court. On June 14, 2006 the Supreme Court of California denied the Petition for Habeas Corpus with a postcard denial that cited *In re Robbins* (1998) 18 Cal.4th 770, 780 and *In re Dixon* (1953) 41 Cal.2d 756.

After receiving an extension, Petitioner filed his First Amended Petition on July 19, 2006. On August 18, 2006, District Court Judge Irma E. Gonzalez dismissed the case because the petition did not state grounds for relief, but gave Petitioner  leave to amend. On November 16, 2006, Petitioner filed his Second Amended Petition ("Petition"). Respondents filed an Answer to the Second Amended Petition on January 31, 2007, along with a Memorandum of Points and Authorities in Support ("Answer"). Petitioner filed a Motion to Strike Answer to the Second Amended Petition on March 7, 2007. The motion was amended on March 8, 2007. On, March 9, 2007, the Court denied Petitioner's Motion to Strike Answer. On April 9, 2007, Petitioner filed a Traverse to the Petition ("Traverse").

# IV.

## STANDARD OF REVIEW

Title 28, U.S.C. 2254, sets the scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.[...]
> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Federal courts look to United States Supreme Court holdings at the time of the state court's decision to determine "clearly established federal law" under section 2254(d)(1). *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003)(quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).  Ninth Circuit law may also be considered "for its persuasive authority in applying Supreme Court law." *Van Tran v. Lindsey*, 212 F.3d 1143, 1150 (9th Cir. 2000), overruled on other grounds; *Lockyer*, 538 U.S. 63; *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003), cert. denied, 540 U.S. 968 (2003).

A state court's decision is "contrary to" clearly established United States Supreme Court precedent if (1) the state court applies a rule different from the governing law set forth in Supreme Court cases or (2) the state court confronts a set of facts that are materially indistinguishable from a Supreme Court case, but still reaches a different result.  *Williams*, 529 U.S. at 405-406, 412 (2000); *Bell v. Cone*, 535 U.S. 685, 694; *Lockyer*, 538 U.S. at 73; *Clark*, 331 F.3d at 1067.  A state court decision does not have to cite to or even be aware of clearly established U.S. Supreme Court precedent, so long as neither the reasoning nor the result of the state court decision contradicts it. *Early v. Packer*, 537 U.S. 3, 8 (2002).

A state court decision may involve an "unreasonable application" of Supreme Court precedent, "if the state court identifies the correct governing legal rule from [the Supreme] Court's

1    cases but unreasonably applies it to the facts of the particular state prisoner's case."  *Williams*, 529

2    U.S. at 407-08.  Alternatively, an unreasonable application may be found, "if the state court either

3    unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it

4    should not apply or unreasonably refuses to extend that principle to a new context where it should

5    apply."  *Id.*; see also *Wiggins v. Smith*, 539 U.S. 510, 520 (2003); *Clark*, 331 F.3d at 1067.  An

6    unreasonable application of federal law requires the state court decision to be more than incorrect

7    or erroneous.  *Lockyer*, 538 U.S. at 75-76.  Instead, the state court's application must be

8    "objectively unreasonable." *Id.* at 76.

9         Where there is no reasoned decision from the state's highest court, the Court "looks

10   through to the last reasoned state court decision.  *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06

11   (1991); *Van Lynn v. Farmon*, 347 F.3d 735 (9th Cir. 2003).  However, if the dispositive state court

12   order does not "furnish a basis for its reasoning," the federal court considering the habeas petition

13   must conduct an independent review of the record to determine whether the state court

14   unreasonably applied controlling federal law.  *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir.

15   2000); *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).

16                                          **V.**

17                              **STATEMENT OF FACTS**

18        This Court gives deference to state court findings of fact and presumes them to be correct;

19   Petitioner may only rebut the presumption of correctness with clear and convincing evidence. 28

20   U.S.C. § 2254(e)(1). The California Court of Appeal ("Cal Ct. App. Opinion") found the following

21   facts and circumstances underlying the petitioner's conviction:

22   "A. *Prosecution Case*

23   Leidy M.

24        On October 23, 1995, Leidy M. spent the night at her mother's home in Escondido. She was
     sleeping in a room with her sister, brother and two year old son when [Petitioner] entered the bedroom
25   at approximately 4:00 a.m. through an unlocked sliding glass door. Leidy, afraid of upsetting her
     mother, kept appellant in the bedroom until all members of her family left the house at which point
26   Leidy asked appellant to leave.
         Leidy knew appellant for five years prior to October 23, 1995. She dated him in the year
27   preceding the rape and became engaged to him at one point. Leidy broke the engagement several
     months earlier and on October 23, 1995 reiterated her desire to dissolve the relationship entirely. In
28   midst of this conversation, [Petitioner] grabbed Leidy by the arms and legs and carried her from the
     living room to the bedroom against her will. When she realized he was not joking, Leidy began to

struggle with [Petitioner]. He then tied her hands behind her back with a sock and forcefully held her down. [Petitioner] pulled down her shorts and underwear, pulled down his own pants and raped her. When she screamed, [Petitioner] grabbed a nearby pair of shorts and shoved them in Leidy's mouth. Afraid that she would suffocate, Leidy agreed to stop screaming if [Petitioner] would remove the cloth from her mouth.

Eventually, Leidy was able to free her hands from the sock and push [Petitioner] off her. She ran out of the room and called 911. Upon learning of the telephone call, [Petitioner] fled the home through the sliding glass door at the rear of the bedroom. Escondido police arrived within a few minutes. Leidy gave the police a statement and was taken to Pomerado Hospital for a medical examination.

Nurse Sandra Stevenson conducted the Sexual Assault Response Team examination of Liedy. Steveson testified to finding bruising and swelling of Leidy's hymeneal area and three abrasions located on her vagina. Based on the physical findings and oral interview, Steveson concluded Leidy's injuries were consistent with rape.

Sometime after October 23, 1995, appellant absconded to Texas where he worked and held a driver's license under the alias "Efrain Meza Dealba." At the request of Escondido detectives, Dallas County Sheriff's Deputy Gary Lachman arrested appellant on January 29, 1999, in connection with the charges related to the October 23, 1995, incident with Leidy M.

Lupe C.

In 1992 appellant raped Lupe C., who was 14 years old at the time. [Petitioner] arrived at Lupe's apartment when she was alone with her four month old son. He asked to use the phone. Lupe, not wanting her parents or [Petitioner's] girlfriend to discover him in the apartment, asked [Petitioner] to leave after making his telephone call. Ignoring Lupe's requests that he leave the apartment, [Petitioner] carried Lupe to her room against her will. He laid her on the bed, got on top of her and forcefully removed her clothes while holding her hands above her head. Again, ignoring Lupe's pleas to stop, appellant proceeded to rape her.

Luze A.

Luze A. testified to a crime committed by appellant in 1991. [Petitioner] crawled through the kitchen window of home Luz shared with her sister sometime after 9:00 p.m. [Petitioner] entered Luz's bedroom and closed the door. The noise of the closing door awakened Luz who looked up to see a person coming quickly toward her. [Petitioner] kneeled on Luz's back and told her "Don't move." The two thrashed about on the bed until both fell to the ground. At that point Luz saw that her assailant was wearing a nylon over his face and began screaming. The screaming awakened Luz's three year old child who started to cry. Perhaps fearing the noise would awaken Luz's sister in another room, [Petitioner] ran from the room and fled the home through the back door.

B. *Defense Case*

[Petitioner's] brother testified that on the evening of October 23, 1995, he and [Petitioner] were at a nightclub. Leidy M. was at the club and asked appellant to go home with her. [Petitioner] agreed to do so. [Petitioner's] brother insisted [Petitioner] go home with him. [Petitioner] agreed. Once home, however, [Petitioner's] pager went off and he left in his car."

## VI.

## DISCUSSION

**A.     Claim One - Cross Examination of Petitioner About Prior Rape Offenses Was**

**Permitted by the Trial Court.**

1    In his first claim, Petitioner argues he was prevented from testifying in his own defense in

2    violation of his constitutional rights as construed in *Rock v. Arkansas*, 483 U.S. 44 (1987).

3    Petitioner claims the trial court ruling violated his constitutional rights to a fair trial because it

4    prevented him from presenting and conducting a defense. (Petition at 7.) The  trial court's ruling

5    permitted the prosecution to cross examine Petitioner about his prior rape offenses. (Lodgment 1 at

6    200-201.) Petitioner argues the trial court erred in ruling prior to Petitioner's testimony and the

7    ruling created "extreme duress" that prevented him from testifying in his own defense. Petitioner

8    asserts the privilege against self incrimination, according to state and federal law, provides

9    protection when a defendant chooses to testify.  (Petition at 6-8.)

10   Respondent contends Petitioner's Claim One should be dismissed for two reasons. First,

11   the claim is procedurally defaulted because the California Supreme Court rejected Petitioner's

12   claim on the basis of a state procedural rule. (Answer at 7.) Second, the claim fails on the merits in

13   spite of the procedural default. (Answer at 11.)

14   **i. State Procedural Rule - *Dixon* Bar was Consistently Applied.**

15   The first issue before this Court is whether a state procedural bar constitutes independent

16   and adequate grounds for denying Petitioner's Claim One, thus invoking the procedural default

17   doctrine. The procedural default doctrine "bar[s] federal habeas when a state court declines to

18   address a prisoner's federal claims because the prisoner has failed to meet a state procedural

19   requirement." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). The state procedural rule must be

20   (1) adequate to support the judgment and (2) independent of federal law. *Id*. at 729-730.

21   The California Supreme Court cited *In re Dixon* (1953) 41 Cal.2d 756 and *In re Robbins*

22   (1998) 8 Cal.4th 770, 780 as the basis for denying Petitioner habeas relief. Under the *Dixon* rule,

23   California state courts will not review the merits of a claim in a habeas corpus proceeding if the

24   claim could have been raised, but was not, in a timely appeal. *Dixon*, 41 Cal.2d at 759; see *In re*

25   *Harris*, 5 Cal.4th at 823 (explaining the *Dixon* rule). *Robbins* prospectively established the

26   "independence" of state procedural rules from federal law. See *Park v. California*, 202 F.3d 1146,

27   153 (9th Cir. 2000). A California court invoking the *Dixon* bar no longer involves federal law and

28   is therefore "independent." See *Id*. at 1152 (suggesting the California Supreme Court adopted the

1  *Robbins* position and now declines to consider federal law when deciding procedurally defaulted

2  claims).

3       State procedural rules must be adequate and independent to preclude federal review.

4  *Coleman,* 501 U.S. at 750. Petitioner only challenges the adequacy of California's procedural rule,

5  not its independence, so the present analysis does not address the independence prong. A state

6  procedural rule on which the State relies to establish a procedural default must also be "adequate

7  to support the judgment." *Id.* at 735. Adequacy is determined by whether a state procedural bar

8  was "firmly established and regularly followed" at the time of the procedural default. *Ford v.*

9  *Georgia*, 498 U.S. 411, 424 (1991). A default under *Dixon* occurs at the point when petitioner had

10  the opportunity to raise the claim, i.e. the filing date of the Opening Brief in his appeal. *Fields v.*

11  *Calderon*, 125 F.3d 757, 760 (9th Cir. 1997). Petitioner filed his Opening Brief on appeal on July

12  8, 2002. (Lodgment No. 7.) Therefore, the "trigger date" for the present case is July 8, 2002.

13       Petitioner does not challenge that the *Dixon* bar is well established for Claim One.

14  Therefore, the Court must determine whether Petitioner has sufficiently demonstrated the

15  California Supreme Court was inconsistent in barring claims as of July 8, 2002.

16       The Ninth Circuit presented a burden shifting analysis to determine the adequacy of a state

17  procedural bar in *Bennett v. Mueller*, 322 F.3d 573, 585-86 (9th Cir. 2003). When Respondent

18  affirmatively pleads the existence of an adequate state procedural rule, Petitioner must then raise

19  "specific factual allegations that demonstrate the inadequacy of the state procedure, including

20  citation to authority demonstrating inconsistent application of the rule." *Id*. at 586. Respondent

21  bears the ultimate burden of proof if Petitioner succeeds in establishing inconsistent application of

22  the rule. *Id*.

23       Respondent has satisfied his initial burden of pleading the adequacy of the *Dixon* bar. (See

24  Answer at 7-9.) Respondent argues Petitioner's Claim One was procedurally barred from federal

25  habeas review when the state court denied the claim by a state procedural rule that was an

26  adequate and independent state ground.  Respondent asserts the procedural default occurred when

27  the California Supreme Court denied Petitioner's claim with a postcard denial that cited *In re*

28  *Dixon* and *In re Robbins*. (Answer at 7.)

1    Once the State has pled the adequacy of a state procedural rule, the burden of proof shifts

2  to petitioner to set forth "specific factual citation[s] to authority demonstrating inconsistent

3  application of the rule." *Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir. 2003). The burden placed

4  on Petitioner is quite modest. Petitioner only needs to "assert" allegations and not prove anything.

5  *Dennis v. Brown*, 361 F. Supp. 2d 1124 (N.D.Cal. 2005). A petitioner may satisfy his or her

6  burden by asserting specific factual allegations that demonstrate the inadequacy of the state

7  procedure, including citations to authority demonstrating inconsistent application of the rule.

8  *Bennett*, 322 F.3d at 586.  Petitioner cites two cases to demonstrate the inconsistent application of

9  the *Dixon* procedural bar by the California Supreme at time of default. (Traverse at 3.)

10    First, Petitioner cites an unpublished opinion for the proposition that California's *Dixon* bar

11  is not "adequate" because the California Supreme Court regularly issues postcard denials without

12  reference to the *Dixon* rule, even though petitioners could have raised their claims on direct

13  appeal. *Vaughn v. Adams*, No. CV F 01 5241 (E.D. Cal., May 26, 2006). However, Petitioner fails

14  to demonstrate the inconsistent application of the untimeliness bar by the California Supreme

15  Court at time of default. Inadequacy was demonstrated in *Vaughn v. Adams* with citations to at

16  least five state cases where the court allegedly came out differently just months prior to the

17  default. *Id*. However,  the cases cited in *Vaughn* do not support Petitioner's position because they

18  occurred four years before the instant procedural default in 2002. *Id*. Petitioner has not cited any

19  authority to demonstrate the inconsistent application of the *Dixon* bar by the California Supreme at

20  time of default in 2002. In spite of *Vaughn,* a state procedural rule is adequate if the state courts

21  follow it in the vast majority of cases. See *Dugger v. Adams*, 489 U.S. 401, 410 11 n.6 (1989);

22  *Moran v. McDaniel*, 80 F.3d 1261, 1270 (9th Cir. 1996) (noting that state procedural rule is still

23  adequate even though petitioner cited two cases where Nevada Supreme Court did not follow

24  rule).

25    Second, Petitioner cites *In re Rosenkrantz* as an example of the California Supreme Court

26  evaluates a habeas petitioner's untimely assertion on the merits. 29 Cal.4th 616 (Cal. 2002).

27  (Traverse at 3). However, *Rosenkrantz* is not an example of the inconsistent application of the

28  *Dixon* procedural bar because it falls within the "fundamental constitutional error" and

"intervening change in law" exceptions. *Rosenkrantz,* 29 Cal.4th at 652. Under California law, when a petitioner fails to bring a claim on direct appeal from a conviction, a California court will still hear the merits of the case if the court finds one of four exceptions to the *Dixon* bar to be applicable: (1) fundamental constitutional error; (2) a lack of fundamental jurisdiction by the trial court over the petitioner; (3) the trial court's action in excess of its jurisdiction; and (4) an intervening change in the law. *Fields v. Calderon*, 125 F.3d 757, 763 (9th Cir. 1997), (quoting *In re Harris*, 5 Cal.4th 813, 828 842 (1993)). In *Rosenkrantz*, the California Supreme Court assessed the constitutionality of a law passed *after* the petitioner's conviction, that gave the Governor authority to review parole decisions. 29 Cal.4th at 625-26. The California Supreme Court's use of judicial discretion to review the claim was consistent with the *Dixon* procedural bar. A state procedural bar is adequate when "the exercise of judgment according to standards that, at least over time, can become known and understood within reasonable operating limits." *Morales v. Calderon*, 85 F.3d 1387, 1392 (9th Cir. 1996).

Under procedural default doctrine, a federal court cannot consider the merits of a habeas petition when the state court denied the petitioner's claims on the basis of a "firmly established and regularly followed" state procedural rule that constitutes adequate, independent grounds for denying the petition. See *Lee v. Kemna*, 534 U.S. 362, 375 (2002). The California Supreme Court has clearly, regularly, and consistently applied its established rules governing procedural default since *In re Clark*, 5 Cal. 4th 750 (1993) and *In re Harris*, 5 Cal.4th 813 (1993). The *Dixon* bar is an adequate state procedural rule because Petitioner's Opening Brief was filed on July 8, 2002, almost a decade after *Robbins* was decided. See *Bennett*, 273 F.3d at 902 (9th Cir.2001) (holding California's post *Robbins* invocation of the procedural default rule of untimeliness to be adequate and independent).

In summary, Petitioner has failed to offer any authority to support his assertion that the *Dixon* procedural bar is inconsistently applied. First, Petitioner cites *Vaughn*, an unpublished federal district court opinion that does not deal with the inconsistent application of the *Dixon* rule at the time of Petitioner's procedural default. Second, Petitioner cites *In re Rosenkrantz,* also inapplicable because the decision in *Rosenkrantz* was in fact consistent with the *Dixon* procedural

bar. The citations to *Vaughn* and *In re Rosenkrantz* are insufficient to satisfy Petitioner's burden to make specific factual allegations that demonstrate the inadequacy of the state procedure. See *Bennett*, 322 F.3d at 586. Therefore, the Court should find the application of the *Dixon* procedural bar in this case to be adequate because Respondent has established the state court's application of the *Dixon* procedural bar was an adequate state ground for rejection of Petitioner's claims.

Under procedural default doctrine there is no federal review unless Petitioner shows "cause and prejudice" or a fundamental "miscarriage of justice". See *Wainwright v. Sykes*, 433 U.S. 72, 72 (1977); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Petitioner does not assert the existence of "cause and prejudice" or "miscarriage of justice" to justify federal review despite the procedural default. Petitioner also does not assert any section 2254(b)(1)(B) exemptions for exhaustion (i.e., the absence of an available state corrective process, or the state process would be ineffective to protect the petitioner's rights). Therefore, the Court will not address these issues. For these reasons it is recommended Petitioner's Claim be denied pursuant to the procedural default doctrine.

### ii.       Merits

Assuming *arguendo* that Petitioner's Claim One is not procedurally defaulted, he would still not be entitled to relief on the merits. Examining the merits of Claim One, Petitioner fails to sufficiently show the state court's ruling permitting the prosecution to cross examine Petitioner about his prior rape offenses was "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). No reasoned state court decision exists with regard to Claim One because the claim was not raised in Petitioner's direct appeal and was procedurally barred in Petitioner's state habeas petition. In such a situation the Ninth Circuit instructs:

> [W]hen a state court does not articulate the rationale for its determination, a review of that court's "application" of clearly established federal law is not possible. [Footnotes omitted]. Thus when confronted with a state court decision that does not provide the basis of its decision, we must determine whether, in light of an independent review of the record and the relevant federal law, the state court's resolution of a petitioner's claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." [Footnote omitted] 28 U.S.C.A. § 2254(d)(1).

1    *Delgado v. Lewis*, 181 F.3d 1087, 1091 (9th Cir.1999) (remanded on other grounds in *Lewis v.*

2    *Delgado*, 528 U.S. 1133 (2000)).

3           On November 1, 1999, Robert Kearney, the Deputy District Attorney, submitted points and

4    authorities to support a motion for impeachment. (Lodgment 1 at 38-46). In a pretrial hearing on

5    November 23, 1999, the prosecution sought to use Petitioner's prior convictions for assault with

6    intent to rape, forcible rape and rape by foreign object to impeach the Petitioner if he testified.

7    After the defense objected, the trial court ruled the Petitioner could be impeached with his prior

8    convictions if he testified in his own defense. (Lodgment 6 at 71). The trial court reasoned the use

9    of these prior convictions would have little prejudicial effect under California Evidence Code

10   Section 352[1] because the convictions were for crimes of moral turpitude and the same evidence

11   was being introduced into the case in chief as propensity evidence under California Evidence Code

12   Section 1108. (*Id*. at 70-71).

13          Petitioner claims his constitutional rights to a fair trial were violated because the trial court

14   ruling created "extreme duress" that prevented him from presenting and conducting a defense.

15   (Petition at 7.) Petitioner asserts the privilege against self incrimination under state and federal law

16   provides protection when a defendant chooses to testify.  (Petition at 6-8.)

17          Respondent argues it is permissible to test a defendant's credibility when the defendant

18   testifies. (Answer at 12). Respondent states impeachment evidence is permissible under federal

19   law. *See Portuondo v. Agard*, 529 U.S. 61, 69 (U.S. 2000); *Brown v. United States*, 356 U.S. 148,

20   154 (U.S. 1958).  Respondent further argues that the prior rape offenses were relevant to

21   Petitioner's mode of operation. (Answer at 12.)

22          Petitioner is correct in asserting a due process right to testify in his own defense. See *Rock*

23   *v. Arkansas*, 483 U.S. 44 (U.S. 1987), *Comer v. Schriro*, 480 F.3d 960, 986 (9th Cir. 2007).

24   However, the state trial court did not violate Petitioner's constitutional rights when it permitted

25   cross examination of the Petitioner about prior rape offenses. The Constitution does not give a

26

27          [1]California Evidence Code § 352 provides, " Discretion of court to exclude evidence. The court in its discretion
     may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a)
28   necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of
     misleading the jury."

defendant a right to testify only to information favorable to his defense without subjecting himself

to cross examination which might tend to incriminate him. *Rock*, 483 U.S. at 52, *Brown v. United*

*States*, 356 U.S. 148, 154 55 (U.S. 1958); *United States v. Nobles*, 422 U.S. 225, 241 (1975). "The

right to testify carries with it the obligation to submit to cross examination." *Williams v. Borg*, 139

F.3d 737, 742 (9th Cir. 1998) quoting *United States v. Martinez*, 883 F.2d 750, 754 (9th Cir.

1989). A defendant can decide strategically whether to testify and reveal damaging information.

See *Rock*, 483 U.S. at 53. *United States v. Alosa*, 14 F.3d 693, 696 (1st Cir. 1994) (commenting

that the Fifth Amendment protects a defendant's right to choose whether to testify, but does not

guarantee that the testimony will only be beneficial to the defendant).

Accordingly, it is recommended for the reasons discussed herein that Petitioner's Claim

One be **DENIED**.

**B.     Claim Two - Admission of Propensity Evidence About Prior Bad Acts**

Petitioner argues in his second claim that his state conviction for forcible rape was obtained

in violation of his due process rights because of the introduction of prior bad act evidence.

Petitioner's constitutional rights were violated when the trial court permitted the prosecution to

present evidence of Petitioner's two prior sexual assault convictions under California Evidence

Code section 1108.[2] (Lodgment 1 at 200-01.)

Petitioner concedes that the California Supreme Court has affirmed the constitutionality of

California Evidence Code section 1108 and the United States Supreme Court has yet to decide the

constitutionality of a state law admitting evidence of prior sexual crimes. (Petition at 9.) Petitioner

argues the admission of propensity evidence was unconstitutional because it was not relevant and

highly prejudicial. (Petition at 9-12.) Petitioner cites *Michelson v. United States*, 335 U.S. 469

(1948) for the general rule that states may not admit evidence of prior bad acts to show a

defendant's propensity to commit a crime. (Petition at 12); (Traverse at 4.) Petitioner also argues

---

[2]Section 1108(a) provides, "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352."

Section 352 states, "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

1   the admitted evidence was more prejudicial than probative and the prosecution should have taken

2   Petitioner's offer to stipulate to the priors under *Old Chief v. United States*, 519 U.S. 172 (1997).

3   (Petition at 10-11); (Traverse at 4.)

4          Citing 28 U.S.C. § 2254(d), Respondent maintains the claim should be dismissed with

5   prejudice because the admission of propensity evidence was neither fundamentally unfair (Answer

6   at 18), contrary to, or an unreasonable application of, clearly established Federal law. (Answer at

7   17).

8          The California Court of Appeal rejected Petitioner's due process argument because the

9   California Supreme Court had already decided that propensity evidence admitted under California

10  Evidence section 1108, permitting the admission of evidence of prior sex offenses, did *not* violate

11  the Constitution. *People v. Flasetta,* 21 Cal.4th 903, 910-922 (1999); (Lodgment 3 at 5). The

12  California Court of Appeal did not address whether the propensity evidence was more prejudicial

13  than probative because this issue was not raised by Petitioner. (Lodgment 3 at 5.)

14         Generally, habeas corpus relief is not appropriate when prior convictions of sexual offenses

15  are admitted to prove a petitioner's propensity to commit a sex crime. The Supreme Court has left

16  open the question whether a state law permitting the use of "prior crimes" evidence to show

17  propensity would violate due process. *Estelle v. McGuire*, 502 U.S. 62, 75 n.5 (1991); see

18  *Holgerson v. Knowles*, 309 F.3d 1200, 1202 (9th Cir. 2002) (habeas relief not warranted unless

19  due process violation was clearly established by the Supreme Court). Petitioner cites a 1948 case

20  *Michelson v. United States*, 335 U.S. 469 (1948) for the proposition that states may not admit

21  evidence of prior bad acts to show a defendant's propensity to commit a crime. (Petition at 12);

22  (Traverse at 4.) However, courts have "routinely allowed propensity evidence in sex-offense cases,

23  even while disallowing it in other criminal prosecutions." See *United States v. LeMay*, 260 F.3d

24  1018, 1025, 1031 (9th Cir. 2001) (upholding constitutionality of Fed. R. Evid. 414, which permits

25  introduction of prior bad acts in sex offense prosecutions); *United States v. Enjady*, 134 F.3d 1427,

26  1433 (10th Cir. 1998); *United States v. Mound*, 149 F.3d 799, 801 (8th Cir. 1998) (holding

27  admission of prior sexual offenses to demonstrate a defendant's propensity to commit a charged

28  sexual offense under Federal Rules of Evidence does not constitute a violation of due process).

The Supreme Court has made clear that violations of due process occur only when the "fundamental fairness" of the trial is undermined. *Estelle v. McGuire*, 502 U.S. 62, 72-73 (1991); *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991). A federal court cannot interfere with a state court's decision to admit evidence of prior crimes or bad acts on due process grounds unless the admission of the evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair. See *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995) (upholding use of evidence of prior conviction when it showed intent because petitioner used the same method to perform both crimes). When the trial court ruled that some of Petitioner's assaults were admissible, the court carefully weighed the inflammatory nature, probability of confusion, remoteness, consumption of time and probative value of the evidence. (Lodgment 6 at 63-67.) The trial court did not allow the Avila incident into the case in chief because its probative value was outweighed by the inflammatory nature of the evidence, possibility of confusion, and consumption of time. (Lodgment 1 at 200, Lodgment 6 at 66-67.) Further, the jury was given limiting instructions[3] as an additional procedural safeguard to mitigate improper prejudice from the prior bad act evidence. (Lodgement 1 at 77-78.) The jury in Petitioner's state trial is presumed to have followed this instruction. *Old Chief v. United States*, 519 U.S. 172, 196-97, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997); *United States v. Reed*, 147 F.3d 1178, 1180 (9th Cir. 1998). Only if the jury cannot draw any permissible inferences the jury may draw from the evidence can its admission violate due process. *Van de Kamp*, 926 F.2d at 920 (9th Cir. 1991). The introduction of the Petitioner's prior convictions for sexual offenses does not violate due process because it is permissible for a jury to infer a petitioner's propensity to commit a sexual offense from prior sexual offenses. See *People v. Flasetta*, 21 Cal.4th 903, 910-922 (1999); *United States v. LeMay*, 260 F.3d 1018, 1025, 1031 (9th Cir. 2001); *United States v. Enjady*, 134 F.3d 1427, 1433 (10th

---

[3]CALJIC 2.50.01 (1999 Revision) in pertinent part says "If you find that the defendant committed a prior sexual offense, you may, but are not required to, infer that the defendant had a disposition to commit the same or similar type of sexual offenses. If you find that the defendant had this disposition, you may, but are not required to infer that he was likely to commit and did commit the crime of which he is accused.

However, if you find by a preponderance of the evidence that the defendant committed prior sexual offenses. that is not sufficient by itself to prove beyond a reasonable that he committed the charged crime. The weight and significance of the evidence, if any, are for you to decide.

Unless you are otherwise instructed, you must not consider this evidence for any other purpose."

1    Cir. 1998); *United States v. Mound*, 149 F.3d 799, 801 (8th Cir. 1998). Therefore, it was not

2    "unreasonable" application of federal law within the meaning of 28 U.S.C. § 2254(d)(1) for the

3    trial court to find permissible inferences could be drawn from the evidence to show Petitioner's

4    intent, motive, and his propensity to commit forcible rape.

5          Petitioner's citation to *Old Chief v. United States, supra,* relies on a mistaken premise. In

6    *Old Chief*, the Supreme Court limited its holding to cases involving stipulations that were

7    probative of legal status alone (e.g., being a prior felon for purposes of federal law). 519 U.S. at

8    183 n.7, 190. Here, the content of Petitioner's proposed stipulation was highly probative of other

9    kinds of issues (i.e., his propensity  to commit forcible rape). In *Old Chief*, the Supreme Court

10   reaffirmed the standard rule that the prosecution is entitled to prove its case as it sees fit, and a

11   criminal defendant may not "stipulate or admit his way out" of the full evidentiary force of the

12   case against him. *Old Chief v. United States*, 519 U.S. 172, 186, 189. The Supreme Court noted the

13   importance of using evidence in lieu of stipulation to a case because "a piece of evidence may

14   address any number of separate elements, striking hard because it shows so much at once...

15   [P]ersuasive power of the concrete and particular is often essential to the capacity of jurors to

16   satisfy the obligations that the law places on them." *Id*. at 187.

17         Consequently, it is recommended that Petitioner's Claim Two be **DENIED** because the

18   admission of propensity evidence was not contrary to, or involved an unreasonable application of,

19   clearly established Federal law.

20                                          **VI.**

21                        **CONCLUSION AND RECOMMENDATION**

22         For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the Court issue an

23   Order **DENYING** Petitioner's Petition for Writ of Habeas Corpus**.**

24         **IT IS ORDERED** that no later than **September 28, 2007** any party to this action may file

25   written objections with the Court and serve a copy on all parties.  The document should be

26   captioned "Objections to Report and Recommendation."

27   ///

28   ///

1    ///

2    ///

3          **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with

4    the Court and served on all parties no later than **October 19, 2007**.  The parties are advised that

5    failure to file objections within the specified time may result in a waiver of the right to raise those

6    objections on appeal of the Court's order.  See *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir.

7    1998); see also *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

8          **IT IS SO ORDERED**.

9    **DATED:  August 29, 2007**

10

11                              **Hon. William McCurine, Jr.**
                               **U.S. Magistrate Judge**
12                              **United States District Court**

13

14   cc: Honorable Irma Gonzalez
        U.S. District Court
15
     All Counsel and Parties of Record
16

17

18

19

20

21

22

23

24

25

26

27

28

                              - 17 -                    05cv0256 IEG (WMc)